# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| **REBECCA TIMS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **CIVIL ACTION 15-0516-WS-B** |
| | ) |
| **SHAUN GOLDEN, etc., et al.,** | ) |
| | ) |
| **Defendants.** | ) |

## ORDER

This matter is before the Court on the motion to dismiss filed by defendants Shaun Golden, Scott Walden, Jason Dean and the City of Atmore ("the City"). (Doc. 12).  The parties have filed briefs in support of their respective motions, (Docs. 13, 25, 28), and the motion is ripe for resolution.  After careful consideration, the Court concludes the motion is due to be granted in part and denied in part.

## BACKGROUND

The seven defendants are the City, Jason Dean as the City's chief of police, and five male City police officers, including Officers Golden and Walden. According to the complaint, in October 2013[1] the plaintiff was arrested by non-defendant officers while under the influence of some foreign substance, with the plaintiff becoming combative and resisting arrest to the point she had to be tased in order to effect the arrest.  The plaintiff was placed in a cell at the City police station.  About two minutes later, an officer observed the plaintiff trying to hang herself, having taken off her shirt and fashioning a noose tied to the top of her cell

---

[1] The complaint actually alleges the impossible – that the incident occurred in October 2015, after the complaint was filed.  (Doc. 1 at 1).  The defendants assert the incident occurred in October 2013, (Doc. 13 at 1), and the plaintiff does not dispute this chronology.  Accordingly, the Court assumes the incident took place in October 2013.

door.  Two officers rushed in, removed the plaintiff's shirt from around her neck, and placed her on the cell bunk.  Medics were called.  (Doc. 1 at 3-4).

In the five minutes between when the plaintiff's suicide attempt was first observed (11:52) and when the medics arrived (11:57), the plaintiff got up from the bunk, cursed the five defendant officers, and claimed they had tried to kill and rape her.[2]  In immediate response to the plaintiff's accusations,[3] four of the defendant officers grabbed the plaintiff and began to undress her, while the fifth (Golden) tased the struggling plaintiff to get her to submit to the undressing.  The officers completely disrobed the plaintiff, then stared at her until the medics arrived.  (Doc. 1 at 4).

Count One, brought pursuant to Section 1983, alleges that the defendant officers committed acts of sexual molestation, sexual misconduct, assault and battery, and outrage, in violation of the plaintiff's First Amendment right of privacy and her Fifth and Fourteenth Amendment rights to due process and equal protection.  Counts Two through Five allege state-law claims of assault and battery, sexual molestation, sexual misconduct and outrage, respectively.  Count Six is a Section 1983 claim against Chief Dean, and Count Seven is a Section 1983 claim against the City.  (Doc. 1 at 4-8).

## DISCUSSION

The movants seek dismissal of all claims against them, based primarily on failure to state a claim and on various forms of immunity.[4]

---

[2] The plaintiff does not in this lawsuit claim they had in fact attempted any such thing.

[3] Although the complaint does not explicitly assert that the defendants acted in retaliation for the plaintiff's comments, her brief does so.  (Doc. 25 at 3, 5).

[4] Defendants Golden and Walden first seek dismissal of all official-capacity claims, on the grounds of redundancy with the claims against the City.  (Doc. 13 at 4).  The plaintiff concurs that the defendants' position is "well taken."  (Doc. 25 at 8).  The official-capacity claims thus will be dismissed.

**I. Federal Claims.**

    **A. Right of Privacy.**

Golden and Walden seek dismissal based on qualified immunity.  (Doc. 13 at 8).  "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  "[T]he burden is first on the defendant to establish that the allegedly unconstitutional conduct occurred while he was acting within the scope of his discretionary authority."  *Harbert International, Inc. v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998).  The burden then shifts to the plaintiff to show that the defendant's conduct "violated a clearly established statutory or constitutional right."  *Grayden v. Rhodes*, 345 F.3d 1225, 1231 (11th Cir. 2003).[5]

    **1. Discretionary authority.**

"[T]he burden is first on the defendant to establish that the allegedly unconstitutional conduct occurred while he was acting within the scope of his discretionary authority. ...  If, and only if, the defendant does that will the burden shift to the plaintiff to establish that the defendant violated clearly established law."  *Harbert*, 157 F.3d at 1281 (emphasis added).  The reason is that an official acting outside the scope of his discretionary authority "ceases to act as a government official and instead acts on his own behalf," so that "the policies underlying the doctrine of qualified immunity no longer support its application."  *Id*.

---

[5] "While qualified immunity is typically addressed at the summary judgment stage of the case, the defense may be raised and considered on a motion to dismiss; the motion will be granted if the complaint fails to allege the violation of a clearly established constitutional right."  *Chesser v. Sparks*, 248 F.3d 1117, 1121 (11th Cir. 2001) (internal quotes omitted).

For purposes of federal qualified immunity analysis, a defendant acts within his discretionary authority when "his actions were undertaken pursuant to the performance of his duties and within the scope of his authority." *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988) (internal quotes omitted). For this inquiry, "[w]e ask whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004).

The first prong of this test requires that the defendant "have been performing a function that, but for the alleged unconstitutional infirmity, would have fallen within his legitimate job description." *Holloman*, 370 F.3d at 1266 (emphasis omitted). "The inquiry is not whether it was within the defendant's authority to commit the allegedly illegal act," but "whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties." *Harbert*, 157 F.3d at 1282 (internal quotes omitted).[6]

As for the second prong, "[e]ach government employee is given only a certain 'arsenal' of powers with which to accomplish her goals." *Holloman*, 370 F.3d at 1267. "Pursuing a job-related goal through means that fall outside the range of discretion that comes with an employee's job is not protected by qualified immunity." *Id.*

The quantum and quality of evidence necessary to meet the defendant's burden "vary in proportion to the degree of discretion inherent in the defendant's office," *Harbert*, 157 F.3d at 1282 (internal quotes omitted), but ordinarily "there must be a showing by competent summary judgment materials of objective

---

[6] For example, the issue is not whether a marshal has the authority to deliver a prisoner into unconstitutional conditions but whether he has the authority to transport and deliver prisoners. *Harbert*, 157 F.3d at 1282 (describing *Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir. 1994)).

circumstances that would compel th[e] conclusion" that the defendant acted within his discretionary authority. *Id*. (internal quotes omitted). Certainly "[a] bald assertion that the acts were taken pursuant to the performance of duties and within the scope of duties will not suffice" to meet the defendant's burden of proof. *Id*. (internal quotes omitted). However, when it is "undisputed … that the [defendants] were acting within their discretionary authority," the Court can deem that element of qualified immunity established. *E.g., Lewis v. City of West Palm Beach*, 561 F.3d 1288, 1291 (11th Cir. 2009).

The plaintiff does not dispute the defendants' contention that they acted within their discretionary authority, (Doc. 13 at 6-7), and the allegations of the complaint affirmatively establish this element. Golden and Walden were on-duty police officers responding to a suicide attempt within the City jail. Such conduct plainly falls within their discretionary authority. *Mercado v. City of Orlando*, 407 F.3d 1152, 1156 (11th Cir. 2005) ("Because the [police officer] defendants were trying to apprehend a potentially suicidal subject, they were clearly engaged in a discretionary capacity."); *Belcher v. City of Foley*, 30 F.3d 1390, 1395 (11th Cir. 1994) (police officers' acts and omissions in failing to prevent an arrestee from committing suicide in city jail fell within their discretionary authority).

### 2. Clearly established right.

The lower courts have discretion whether to address first the existence of a constitutional violation or the clearly established nature of the right allegedly violated. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *accord Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012). The defendants identify the "dispositive question" on their motion as whether the law was clearly established. (Doc. 13 at 14).

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202

(2001).  "In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle*, 132 S. Ct. at 2093 (internal quotes omitted).  "The salient question … is whether the state of the law at the time of an incident provided fair warning to the defendants that their alleged conduct was unconstitutional." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014).  To attain that level, "the right allegedly violated must be established, not as a broad general proposition, … but in a particularized sense so that the contours of the right are clear to a reasonable official." *Reichle*, 132 S. Ct. at 2094.  The law is clearly established if any of three situations exists.

"First, the words of the pertinent federal statute or constitutional provision in some cases will be specific enough to establish clearly the law applicable to particular conduct and circumstances to overcome qualified immunity, even in the total absence of case law." *Vinyard v. Wilson*, 311 F.3d 1340, 1350 (11th Cir. 2002) (emphasis omitted).  The requisite fair and clear notice can be given without case law only "[i]n some rare cases." *Williams v. Consolidated City of Jacksonville*, 341 F.3d 1261, 1270 (11th Cir. 2003).

"Second, ... some broad statements of principle in case law are not tied to particularized facts and can clearly establish law applicable in the future to different sets of detailed facts." *Vinyard*, 311 F.3d at 1351.  "For example, if some authoritative judicial decision decides a case by determining that 'X Conduct' is unconstitutional without tying that determination to a particularized set of facts, the decision on 'X Conduct' can be read as having clearly established a constitutional principle: put differently, the precise facts surrounding 'X Conduct' are immaterial to the violation." *Id*.  "[I]f a broad principle in case law is to establish clearly the law applicable to a specific set of facts facing a government official, it must do so with obvious clarity to the point that every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted." *Id*. (internal quotes omitted).  "[S]uch decisions are rare," and "broad principles of law are

generally insufficient to clearly establish constitutional rights." *Corey Airport Services, Inc. v. Decosta*, 587 F.3d 1280, 1287 (11th Cir. 2009).

"Third, [when] the Supreme Court or we, or the pertinent state supreme court has said that 'Y Conduct' is unconstitutional in 'Z Circumstances,'" then if "the circumstances facing a government official are not fairly distinguishable, that is, are materially similar [to those involved in the opinion], the precedent can clearly establish the applicable law." *Vinyard*, 311 F.3d at 1351-52.

When case law is utilized to show that the law was clearly established, the plaintiff must "point to law as interpreted by the Supreme Court [or] the Eleventh Circuit," and such case law must pre-date the challenged conduct. *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005); *accord Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011) (en banc). Moreover, "[t[he law cannot be established by dicta[, which] is particularly unhelpful in qualified immunity cases where we seek to identify clearly established law." *Santamorena v. Georgia Military College*, 147 F.3d 1337, 1342 n.13 (11th Cir. 1998) (internal quotes omitted).

The plaintiff begins in a hole because, as the defendants point out, she cites the First Amendment as the fount of her right to privacy, while the case law places its source in the Fourth Amendment. (Doc. 13 at 8-9). As the defendants proceed to discuss at length the relevant Fourth Amendment jurisprudence, (*id*. at 9-14), it does not appear that they consider the plaintiff's misnomer dispositive. Neither, then, does the Court.

"[W]e hold that a prisoner retains a constitutional right to bodily privacy." *Fortner v. Thomas*, 983 F.2d 1024, 1026 (11th Cir. 1993). "We joined other circuits recognizing a prisoner's constitutional right to bodily privacy in *Fortner* ...." *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006). "We do note, without endorsement or criticism, that [*Fortner*] concludes that jail inmates retain a right to bodily privacy that implicates the Fourth Amendment." *Powell v. Barrett*, 541 F.3d 1298, 1314 n.7 (11th Cir. 2008) (en banc). These cases clearly

establish, for qualified immunity purposes, that prisoners have a Fourth Amendment right to bodily privacy.

The defendants argue that *Fortner* does not control because it "conflict[s] with binding Supreme Court precedent." (Doc. 13 at 11 n.3). The Court cannot agree. The Court in *Hudson v. Palmer*, 468 U.S. 517 (1984), did not address privacy in one's body at all but only privacy in a "prison cell." *Id*. at 522, 526, 527, 530, 536. And *Bell v. Wolfish*, 441 U.S. 520 (1979), did not rule that inmates have no constitutional right to bodily privacy but only that, under the circumstances presented, the body-cavity strip searches at issue were not constitutionally unreasonable. *Id*. at 558. Far from rejecting any interest in bodily privacy, the *Bell* Court balanced the institution's interests "against the privacy interests of the inmates." *Id*. at 559.

The defendants appear to suggest that any right to bodily privacy is limited to a right not to be required to perform sex acts for the amusement of correctional officers. (Doc. 13 at 16-17). The Court cannot agree that the right is so restricted. "We are persuaded to join other circuits in recognizing a prisoner's constitutional right to bodily privacy because most people have a special sense of privacy in their genitals, and *involuntary exposure of them in the presence of people of the other sex* may be especially demeaning and humiliating." *Fortner*, 983 F.2d at 1030 (emphasis added, internal quotes omitted). "In *Fortner*, we held that male prisoners' rights to bodily privacy may be violated by *allowing female correctional officers to view them in states of nudity*." *Padgett v. Donald*, 401 F.3d 1273, 1281 (11th Cir. 2005) (emphasis added). "We have reaffirmed the privacy rights of prisoners emphasizing the *harm of compelled nudity*." *Boxer X*, 437 F.3d at 1111 (emphasis added). "These two cases [*Fortner* and *Boxer X*] clearly establish the principle that, absent a legitimate reason, individuals maintain a right to bodily privacy, in particular the right *not have their genitals exposed to onlookers*." *Mitchell v. Stewart*, 608 Fed. Appx. 730, 735 (11th Cir. 2015) (emphasis added). The Court therefore assumes it is clearly established for

qualified immunity purposes that a prisoner's constitutional right to privacy extends to involuntary nakedness in view of the opposite sex.[7]

The defendants argue that *Mitchell* limits a prisoner's privacy right to exposure to "onlookers," which they interpret as excluding law enforcement officers of the opposite sex. (Doc. 13 at 13). But *Mitchell* did not so define the term "onlookers," and it could scarcely have adopted the defendants' proposed exclusion, since the cases on which *Mitchell* relied for this proposition involved exposure *only* to law enforcement officers of the opposite sex. *Boxer X*, 437 F.3d at 1109; *Fortner*, 983 F.2d at 1026-27.

Next, the defendants suggest that, whatever bodily privacy rights prisoners (that is, incarcerated convicts) may possess, it is not clearly established that arrestees or pretrial detainees such as the plaintiff possess such rights. (Doc. 13 at 17-18). But the Supreme Court ties the extent of an individual's privacy rights to her location along a "'continuum' of state-imposed punishments." *Samson v. California*, 547 U.S. 843, 850 (2006). Thus, "parolees have fewer expectations of privacy than probationers, because parole is more akin to imprisonment than probation is to imprisonment." *Id*. From that clearly established proposition, it would seem inescapable that a mere arrestee or pretrial detainee such as the plaintiff can have no lesser right to bodily privacy than does an incarcerated convict. As the Eleventh Circuit recognizes, "[t]he rights of arrestees are surely as substantial as those of inmates." *Mitchell*, 608 Fed. Appx. at 735.

Although it thus appears to be clearly established that a female arrestee or pretrial detainee has a constitutional right to bodily privacy that may be violated when her nude body is involuntarily exposed to view by male law enforcement officers, such involuntary exposure does not of itself necessarily amount to a constitutional violation. "When a prison regulation or policy impinges on

---

[7] The defendants object that *Mitchell* is unpublished and that it was decided after the events in question. (Doc. 13 at 13). This would be a problem if *Mitchell* were offered as a case clearly establishing the law, but it is not; instead, it is a case recognizing that the law was already clearly established by earlier, published cases.

inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Fortner*, 983 F.2d at 1030 (internal quotes omitted).  Although *Fortner* involved a prison regulation or policy, the same standard applies when officers involuntarily expose an arrestee without acting pursuant to regulation or policy.  *See Mitchell*, 608 Fed. Appx. at 732-33, 735 (invoking *Fortner*'s "legitimate reason" exception in the absence of a regulation or policy).  The plaintiff does not argue otherwise.

According to the complaint, the defendants on October 10, 2013 were dealing with a person who:  had just been arrested under the influence of a foreign substance; had resisted arrest to the point that a Taser was required to subdue her; had moments before removed her shirt and tried to hang herself with it; was recognized to be in need of medical help, which had been immediately summoned; had failed or refused to remain on her bunk for the few minutes before medical help arrived; and had instead gotten up, cursed the officers, and wildly accused them of trying to kill and rape her.  As the defendants recognize, (Doc. 13 at 14), the burden on the plaintiff is thus to show that it was then clearly established, by Supreme Court or Eleventh Circuit holdings, that removing the remaining clothing of such an unhinged individual – who had just used her own clothing in an effort to destroy her life – and remaining in eyesight of her during the brief interval before medical assistance arrives, was not conduct reasonably related to legitimate penological interests.

The plaintiff makes no effort to clear this formidable hurdle.  She cites only *Boxer X*, (Doc. 25 at 3, 5), which did not address or apply the *Fortner* exception and which in any event involved a female guard's demands that the plaintiff strip and masturbate for her enjoyment – a scenario worlds removed from the one presented here.  437 F.3d at 1109.

Rather than face her hurdle, the plaintiff tries to sidestep it.  The real reason the officers stripped and ogled her, she says, was not her uncontrollable, delusional, self-destructive behavior but a desire to retaliate against her for

(falsely) accusing them of trying to kill and rape her, which she maintains is not a legitimate penological interest.  (Doc. 25 at 3-5).  But the plaintiff has failed to show that whether the invasion of an arrestee's right to bodily privacy is constitutionally permissible depends on the defendant's subjective motives rather than on the objective circumstances.

In *Evans v. Stephens*, 407 F.3d 1272 (11th Cir. 2005) (en banc), for example, the defendant officer, upon delivering two arrestees to the jail, conducted a body-cavity strip search of them in a quest for evidence of drug activity.  *Id*. at 1276-77.  The Eleventh Circuit ruled that the defendant was required to possess, at least, a reasonable suspicion to justify such a search and that whether such a suspicion existed "is an objective question viewed from the standpoint of a reasonable police officer at the scene[,] based on the totality of the circumstances." *Id*. at 1280.  "Of course, [the defendant's] subjective intentions and beliefs in conducting the strip search are immaterial to the Fourth Amendment analysis. [citation omitted]  Ulterior motives will not make an otherwise lawful search unlawful."  *Id*. at 1280 n.9.

Although *Evans* involved a Fourth Amendment unreasonable-search claim rather than a Fourth Amendment invasion-of-privacy claim, it reflects the general principle that a law enforcement officer's subjective motivations are immaterial to the existence *vel non* of a Fourth Amendment violation.  So also, "[a]n officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force …."  *Graham v. Connor*, 490 U.S. 386, 397 (1989).  In the present context, the factors identified in *Fortner* for gauging the reasonableness of a regulation impinging upon a prisoner's right to bodily privacy likewise leave no room for consideration of the defendant's subjective motivations.[8]  And as final

---

[8] *See* 983 F.2d at 1030 (identifying the relevant factors as the degree of rational connection between the regulation and the asserted government interest justifying it, the existence of alternative means of vindicating the prisoner's interest, the degree to which accommodating the prisoner's interest would affect other prison interests, and whether the regulation represents an exaggerated response to prison concerns).

confirmation that the officers' subjective motivations are irrelevant, "[w]e accept that Officer Highfill's subjective intentions [allegedly, sexual gratification] are unimportant in determining whether the complained-of touching was – objectively – too much of an affront to Plaintiff's personal privacy and dignity in a constitutional sense and, therefore, unreasonable under the Fourth Amendment." *Hicks v. Moore*, 422 F.3d 1246, 1254 (11th Cir. 2005).

Even were there any question on this issue, the plaintiff has failed to carry (or even acknowledge) her burden of showing it was clearly established in October 2013, by Supreme Court or Eleventh Circuit holdings, that a law enforcement officer's subjectively bad intent could expose him to liability for impinging on the bodily privacy of an arrestee, detainee or prisoner even though the impingement was reasonably related to legitimate penological interests.[9]

In sum, defendants Golden and Walden are entitled to dismissal of the plaintiff's federal privacy claim on the grounds of qualified immunity.[10]

**B.  Due Process.**

"Claims involving the mistreatment of … pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause …." *Bozeman v.*

---

[9] Because the plaintiff has failed to show that the officers' liability can be based on their subjective motivations despite the objective circumstances, and because she has not shown that any such principle was clearly established in October 2013, Golden and Walden are entitled to qualified immunity.  Once thus established, "a defense of qualified immunity may not be rebutted by evidence that the defendant's conduct was malicious or otherwise improperly motivated."  *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998).

[10] "Because qualified immunity is only a defense to personal liability for monetary awards resulting from government officials performing discretionary functions, qualified immunity may not be effectively asserted as a defense to a claim for declaratory or injunctive relief."  *Ratliff v. DeKalb County*, 62 F.3d 338, 340 n.4 (11th Cir. 1995); *accord Swint v. City of Wadley*, 51 F.3d 988, 1001 (11th Cir. 1995); *D'Aguanno v. Gallagher*, 50 F.3d 877, 879 (11th Cir. 1995).  The complaint, however, does not seek declaratory or injunctive relief.  (Doc. 1 at 5).

*Orum*, 422 F.3d 1265, 1271 (11th Cir. 2005) (internal quotes omitted), *abrogated in part on other grounds, Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015).[11]

The plaintiff complains of "assault and battery," (Doc. 1 at 5), which the defendants – without challenge by the plaintiff – interpret as an excessive force claim. (Doc. 13 at 20-21). In October 2013, when the incident occurred, the Eleventh Circuit rule governing excessive force claims against pretrial detainees under the Due Process Clause provided that "whether or not a [jail officer's] application of force is actionable turns on whether that force was applied in a good faith effort to maintain or restore discipline or maliciously or sadistically for the very purpose of causing harm." *Bozeman*, 422 F.3d at 1271 (internal quotes omitted). According to the plaintiff (and unchallenged by the defendants), the complaint alleges that Officer Golden tased her in retaliation for falsely accusing the officers of trying to rape and kill her. (Doc. 25 at 3, 5). In the absence of any argument by the defendants, the Court assumes the complaint adequately alleges that Golden tased the plaintiff maliciously or sadistically and without any purpose to maintain or restore discipline. Under *Bozeman*, "where this kind of excessive force violation is established, there is no room for qualified immunity." 422 F.3d at 1272.

However, and as the defendants note, (Doc. 13 at 21), the Supreme Court later abrogated *Bozeman* by holding that "an objective standard is appropriate in the context of excessive force claims brought by pretrial detainees pursuant to the Fourteenth Amendment." *Kingsley*, 135 S. Ct. at 2476. Again, "we hold that courts must use an objective standard." *Id*. at 2472-73. Specifically, the force employed must be "objectively unreasonable" under the facts and circumstances,

---

[11] As the defendants point out, (Doc. 13 at 18), "[t]he Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of [liberty] without 'due process of law.'" *Dusenberry v. United States*, 534 U.S. 161, 167 (2002). Because the Fifth Amendment does not apply to state officers, the plaintiff's due process claim is due to be dismissed to the extent it invokes that amendment.

from the perspective of a reasonable officer on the scene. *Id*. at 2473-74. In establishing this standard, the Supreme Court specifically rejected the "maliciously or sadistically" test, referring directly to *Bozeman*. *Id*. at 2472, 2475. If *Kingsley* applies retroactively, its objective standard controls the plaintiff's claim, rendering futile her reliance on the officers' allegedly bad motives.

"The general rule is that decisions of the Supreme Court must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate [the] announcement of the rule." *Rodgers v. Singletary*, 142 F.3d 1252, 1253 (11th Cir. 1998); *accord Smith v. Jones*, 256 F.3d 1135, 1141 (11th Cir. 2001). Pursuant to this rule, the *Rodgers* Court retroactively applied an intervening Supreme Court decision that restricted the plaintiff inmate's ability to establish a due process violation. 142 F.3d at 1253; *see also Acoff v. Abston*, 762 F.2d 1543, 1548-49 (11th Cir. 1985) (ruling that *Tennessee v. Garner*, 471 U.S. 1 (1985), which made it more difficult to kill fleeing suspects constitutionally, applied retroactively because it "was not an entirely new and unanticipated principle of law that would justify non-retroactivity").

The Court concludes that *Kingsley* applies retroactively. The *Acoff* Court stressed that *Garner* overruled none of the Supreme Court's prior precedents and that it did not contradict near-unanimous lower court authority. 762 F.2d at 1549. So here, *Kingsley* did not overrule any Supreme Court precedent; on the contrary, the Court emphasized that its ruling "is consistent with our precedent." 135 S. Ct. at 2473; *accord id*. at 2474. Moreover, far from upsetting nearly unanimous appellate rulings, the *Kingsley* Court noted the split of appellate authority as to the proper standard. *Id*. at 2472.

It is thus the objective *Kingsley* standard that must be applied to the plaintiff's claim of excessive force under the Fourteenth Amendment. And because that standard applies, the burden on the plaintiff is to show that it was clearly established, in October 2013, that Officer Golden's tasing of the plaintiff

was objectively unreasonable under the circumstances then presented.  As with her privacy claim, this is a most formidable hurdle, given the circumstances she alleges in her complaint,[12] and it is made even more so by the absence of Eleventh Circuit authority employing the objective standard before *Kingsley* introduced that standard in 2015.  At any rate, the plaintiff's complete failure to address her burden is fatal to her claim.[13]

### C.  Equal Protection.

As the defendants note, (Doc. 13 at 18), "the Fifth Amendment imposes on the Federal Government the same standard required of state legislation by the Equal Protection Clause of the Fourteenth Amendment."  *Schweiker v. Wilson*, 450 U.S. 221, 226 n.6 (1981).  Because the Fifth Amendment does not apply to state officers, the plaintiff's equal protection claim is due to be dismissed to the extent it invokes that amendment.

---

[12] In the Fourth Amendment context, tasings have repeatedly been held constitutionally reasonable or at least sheltered by qualified immunity.  *See, e.g., Mann v. Taser International, Inc.*, 588 F.3d 1291, 1306 (11th Cir. 2009) (tasing an arrestee three times was constitutionally reasonable because the arrestee's conduct "was violent, aggressive and prolonged" and because she "was clearly a danger to herself and others").  In *Hoyt v. Cooks*, 672 F.3d 972 (11th Cir. 2012), the Eleventh Circuit "determined that police officers were entitled to qualified immunity on excessive-force claims in a situation where they repeatedly used their Tasers in an attempt to subdue a mentally unstable arrestee."  *Bussey-Morice v. Gomez*, 586 Fed. Appx. 621, 630 (11th Cir. 2014).

[13] The only other force applied against the plaintiff was grabbing and undressing her.  The complaint does not, as the plaintiff suggests, allege that the officers did so "forcefully," (Doc. 25 at 3), but it would not matter if it did so, since she has no authority for the proposition that such conduct, under the circumstances presented, would violate the Due Process Clause, much less that any such proposition was clearly established in October 2013.

To the uncertain extent the plaintiff alleges that her due process rights were violated by alleged "sexual molestation [and] sexual misconduct," (Doc. 1 at 5), she has not attempted to show that a subjective standard applies or that it was clearly established in October 2013 that Officer Walden's conduct violated her due process rights.

To survive dismissal under Rule 12(b)(6), a complaint must first satisfy the pleading requirements of Rule 8(a)(2),[14] which rule provides that "[a] pleading that states a claim for relief must contain … a short and plain statement of the claim showing that the pleader is entitled to relief …."  While Rule 8 establishes a regime of "notice pleading," *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 513-14 (2002), it does not eliminate all pleading requirements.

First, the complaint must address all the elements that must be shown in order to support recovery under one or more causes of action.  "At a minimum, notice pleading requires that a complaint contain inferential allegations from which we can identify each of the material elements necessary to sustain a recovery under some viable legal theory."  *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 960 (11th Cir. 2009) (emphasis and internal quotes omitted).

Pleading elements is necessary, but it is not enough to satisfy Rule 8(a)(2). The rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do" to satisfy that rule.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2009).  There must in addition be a pleading of facts.  Though they need not be detailed, "[f]actual allegations must be enough to raise a right to relief above the speculative level ...."  *Id*.  That is, the complaint must allege "enough facts to state a claim for relief that is plausible on its face."  *Id*. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard … asks for more than a sheer possibility that the defendant has acted unlawfully," and "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Id*. (internal quotes omitted).  A complaint lacking "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" will not "survive a motion to

---

[14] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2009).

dismiss." *Id*.  But so long as the plausibility standard is met, the complaint "may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotes omitted).

As the defendants point out, (Doc. 13 at 18-20), while the complaint asserts that the plaintiff's equal protection rights were violated, it does not allege – at all, much less plausibly – that the plaintiff was treated less favorably than anyone else (for a "class of one" claim) or than persons outside some group of which she is a member.  She therefore has failed to satisfy Rule 8(a)(2), and her claim is subject to dismissal under Rule 12(b)(6).  The plaintiff offers no discernible argument to the contrary.

### D.  Supervisory Liability.

Count VI alleges that Chief Dean's "deliberate indifference to the hiring, lack of training and supervision" of the defendant officers caused the plaintiff to be deprived of her privacy, due process and equal protection rights.  (Doc. 1 at 8).

The defendants first argue this claim fails "for lack of an underlying constitutional violation" by the defendant officers.  (Doc. 13 at 28).  The defendants, however, have not addressed whether the officers' conduct in fact violated the plaintiff's privacy or due process rights; instead, they argue only that the officers did not do so in violation of clearly established law.  (*Id*. at 14-15, 18, 21-23).  And while the defendants do argue (successfully) that the plaintiff has not adequately pleaded an equal protection violation, (*id*. at 19), as discussed in Part III, the plaintiff will be afforded an opportunity to re-plead that claim.  In short, Chief Dean cannot prevail on the instant motion based on the lack of an underlying constitutional violation.

"It is well-established that § 1983 claims may not be brought against supervisory officials on the basis of vicarious liability or respondeat superior." *Amnesty International v. Battle*, 559 F.3d 1170, 1180 (11th Cir. 2009).  Instead,

"[s]upervisory liability lies where the defendant personally participates in the unconstitutional conduct or there is a causal connection between such conduct and the defendant's actions."  *Harper v. Lawrence County*, 592 F.3d 1227, 1236 (11th Cir. 2010).  The causal connection can be established in any of three ways (for a total of four potential bases of liability).  The first requires both a "history of widespread abuse" placing the supervisor "on notice of the need to correct the alleged deprivation" and the supervisor's failure to do so.  The second is established "when a supervisor's custom or policy … result[s] in deliberate indifference to constitutional rights."  The third requires that the supervisor "directed the subordinates to act unlawfully" or "knew" they would do so "and failed to stop them from doing so."  *Id.* (internal quotes omitted).

To establish causation, the plaintiff relies on a history of widespread abuse and on custom or policy.  (Doc. 25 at 5).  As the defendants note, (Doc. 13 at 30), the complaint does not allege, plausibly or otherwise, the existence of either a history of abuse or a custom or policy.  Count VI therefore fails to satisfy Rule 8(a)(2) and is subject to dismissal under Rule 12(b)(6).[15]

### E.  Municipal Liability.

Count VII contains no additional allegations, but it incorporates Count VI, (Doc. 1 at 8), and the defendants construe it as alleging the City's liability for Chief Dean's alleged deliberate indifference regarding the hiring, training and supervision of the defendant officers.  (Doc. 13 at 23).  They argue the complaint does not allege the City's culpability or any causal connection with any constitutional violation visited on the plaintiff.  (*Id.* at 24-25).  They note the complaint's failure to allege anything regarding the defendant officers' pre-hire

---

[15] The defendants propose that Chief Dean be awarded qualified immunity, on the grounds that what constitutes "deliberate indifference" has not been clearly established. (Doc. 13 at 30-32).  Until and unless the plaintiff rectifies her pleading deficiency, it is not clear the Court can resolve a qualified immunity issue on that basis.

background or anything reflecting the existence of notice to the City of a need to engage in additional training and/or supervision.  (*Id.* at 25-28).  The plaintiff offers no relevant response.  The Court agrees that Count VII fails to satisfy Rule 8(a)(2) and is subject to dismissal under Rule 12(b)(6).

## II.  State Claims.

The state claims are brought against only the individual defendants.  (Doc. 1 at 5-7).

### A.  Sexual Molestation and Sexual Misconduct.

The plaintiff concedes that Alabama recognizes no such claim separate from the tort of assault and battery.  (Doc. 25 at 4).  Accordingly, Counts III and IV are due to be dismissed.

### B.  Assault and Battery.

The defendants point out that "[t]he use of force … is justified" by "[a] person acting under a reasonable belief that another person is about to commit suicide[, who] may use reasonable physical force upon that  person to the extent that he reasonably believes it necessary to thwart the result."  Ala. Code § 13A-3-24(4).  The defendants argue that the complaint "depict[s] the use of force to deprive the Plaintiff of the means to commit suicide," such that Count II does not state a claim for assault and battery.  (Doc. 13 at 32-33).

As a threshold matter, Section 13A-3-24(4) is part of the Alabama Criminal Code, and the defendants have not shown its applicability in this civil context.  Moreover, Chapter 3 of Title 13A identifies "defenses," so it is not clear how lack of justification could be considered an element of the plaintiff's case.[16]

---

[16] "To succeed on a claim alleging battery, a plaintiff must establish:  (1) that the defendant touched the plaintiff; (2) that the defendant intended to touch the plaintiff; and (3) that the touching was conducted in a harmful or offensive manner."  *Ex parte Atmore*

To the extent the defendants assert that the complaint establishes justification under Section 13A-3-24(4) as a matter of law, the applicability of that provision appears to hinge on the defendant's subjective beliefs (that the plaintiff was about to commit suicide and that the force employed was necessary to thwart her suicide). The complaint's allegations regarding the circumstances may suggest the defendants could reasonably have held these beliefs, but they do not establish that the defendants in fact possessed them.

In sum, given only the defendants' superficial treatment, the Court is unable to conclude that the complaint fails to state a claim for assault and battery.

The defendants also argue they are entitled to state-agent immunity because they were engaged in a "discretionary function" and because the complaint "does not plausibly demonstrate an exception to the State-agent immunity defense." (Doc. 13 at 37-40).

> Every peace officer … who is employed or appointed pursuant to the Constitution or statutes of this state, whether appointed or employed as such peace officer by the state or a county or municipality thereof, … and whose duties include the enforcement of … the criminal laws of this state, and who is empowered by the laws of this state … to arrest and to take into custody persons who violate, or who are lawfully charged by warrant, indictment, or other lawful process, with violations of, the criminal laws of this state, shall at all times be deemed to be officers of this state, and as such shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties.

Ala. Code § 6-5-338(a). "[W]hether a qualified police officer is due § 6-5-338(a) immunity is now judged by the restatement of State-agent immunity articulated by

---

*Community Hospital*, 719 So. 2d 1190,1193 (Ala. 1998). An assault is "an intentional, unlawful offer to touch the person of another in a rude or angry manner under such circumstances as to create in the mind of the [plaintiff] a wellfounded fear of an imminent battery, coupled with the apparent present ability to effectuate the attempt, if not prevented." *Wright v. Wright*, 654 So. 2d 542, 544 (Ala. 1995) (internal quotes omitted).

*Ex parte Cranman*, 792 So. 2d 392 (Ala. 2000)."  *Blackwood v. City of Hanceville*, 936 So. 2d 495, 504 (Ala. 2006) (internal quotes omitted).

"A State agent asserting State-agent immunity bears the burden of demonstrating that the plaintiff's claims arise from a function that would entitle the State agent to immunity."  *Ex parte Kennedy*, 992 So. 2d 1276, 1282 (Ala. 2008) (internal quotes omitted).  "Should the State agent make such a showing, the burden then shifts to the plaintiff to show that one of the two categories of exceptions to State-agent immunity recognized in *Cranman* is applicable."  *Id.*

As the defendants note, (Doc. 13 at 38), "the guarding of a city jail by a regular police officer" constitutes a "law enforcement dut[y]" for purposes of Section 6-5-338(a).  *Howard v. City of Atmore*, 887 So. 2d 201, 204 (Ala. 2003). It also falls within at least one of the categories of conduct established by *Cranman* as cloaking the officer with immunity, *viz.*, "'exercising judgment in the enforcement of the criminal laws of the State.'"  *Id.* at 205 (quoting *Cranman*, 792 So. 2d at 405).[17]  The plaintiff makes no argument to the contrary.

As the defendants correctly note, (Doc. 13 at 39-40), the complaint does not mention or plead the existence of any exception to state-action immunity, much less do so plausibly.  But the defendants cite no authority for the proposition that a plaintiff must in her complaint plead such an exception.[18]

---

[17] The Alabama Supreme Court later expanded this *Cranman* category to expressly include "serving as peace officers under circumstances entitling such officers to immunity pursuant to § 6-5-338(a), Ala. Code 1975."  *Hollis v. City of Brighton*, 950 So. 2d 300, 309 (Ala. 2006).

[18] *Cf. Skrtich v. Thornton*, 280 F.3d 1295, 1306 (11th Cir. 2002) ("Qualified immunity is an affirmative defense …."); *Jones v. Bock*, 549 U.S. 199, 216 (2007) ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."); *Marsh v. Butler County*, 268 F.3d 1014, 1022 (11th Cir. 2001) (en banc) "A complaint is also subject to dismissal under Rule 12(b)(6) when its allegations – on their face – show that an affirmative defense bars recovery on the claim.").

### C.  Outrage.

Among the elements of an outrage claim is the infliction of severe emotional distress.  *E.g., Ex parte Crawford & Co*., 693 So. 2d 458, 460 (Ala. 1997).  As the defendants note, (Doc. 13 at 34), the complaint does not allege, plausibly or otherwise, that the plaintiff experienced severe – or any – emotional distress.  That failure exposes Count V to dismissal for failure to state a claim.

Another element of an outrage claim is that the defendant's conduct be extreme and outrageous.  *E.g., Ex parte Crawford & Co*., 693 So. 2d at 460.  As the defendants acknowledge, (Doc. 13 at 33), extreme and outrageous conduct includes "egregious sexual harassment."  *E.g., Ex parte Bole*, 103 So. 3d 40, 52 (Ala. 2012) (internal quotes omitted).  The defendants do not suggest that their alleged conduct falls short of that standard as a matter of law, but they do assert that, given the "obvious alternative explanation" that they were trying to prevent the plaintiff's suicide, the suggestion that they acted from sexual motives "is not a plausible conclusion."  (Doc. 13 at 35).

The Court accepts as a general proposition that the existence of an obvious alternative explanation for challenged conduct may render a plaintiff's allegation of a bad intent implausible for purposes of Rule 8(a)(2), *Twombly* and *Iqbal*.  *See Iqbal*, 556 U.S. at 682 ("As between that obvious alternative explanation for the arrests … and the purposeful, invidious discrimination respondent asks us to infer, discrimination is not a plausible conclusion.").  But the defendants have failed to explain how the plaintiff's recent suicide attempt renders it implausible as a matter of law that they were motivated by anything other than altruism and/or duty. Certainly the plaintiff's attempt at self-destruction renders it plausible that they were so motivated, but it is difficult to see how it eliminates the plausibility of a sexual or retaliatory[19] motivation, especially given the complaint's allegation that

---

[19] The defendants have not attempted to show that Alabama law concerning the tort of outrage requires that the defendant's motivation for visiting egregious sexual harassment on the plaintiff be sexual and not, for example, retaliatory.

the defendants did not disrobe her immediately after her suicide attempt but later, immediately after she accused them of attempting to kill and rape her.  The defendants' cursory treatment of the issue precludes the Court from accepting their position.

The defendants assert with respect to outrage the same argument concerning state-agent immunity that they raise regarding the assault and battery claim, (Doc. 13 at 37-40), with the same result.

### III.  Leave to Amend.

The defendants seek dismissal with prejudice.  (Doc. 12).  As to any count or portion of a count dismissed, the plaintiff requests leave to file an amended complaint.  (Doc. 25 at 8-9).  The defendants oppose the request because:  (1) it was not made in the form of a motion; (2) no proposed amended complaint is attached; and (3) any amendment would be futile.  (Doc. 28 at 10-12).

"Where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice."  *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991).  While the Eleventh Circuit later issued a "substitute … rule" that "[a] district court is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court," *Wagner v. Daewoo Heavy Industries America Corp*., 314 F.3d 541, 542 (11th Cir. 2002) (en banc), that exception does not apply here, where the plaintiffs have expressly sought leave to amend.

The defendants suggest that a plaintiff cannot be granted leave to amend unless she files, while the defendant's motion to dismiss is pending, a motion for leave to amend with an attached copy of the proposed amended complaint.  (Doc. 28 at 10-12).  The two cases on which they rely for this proposition, however, state only that a district court does not abuse its discretion if it denies leave to amend

for failure to observe these formalities.  The Court in its discretion declines to insist on them.

The defendants do not argue that it is impossible for any amended complaint to correct the pleading deficiencies noted in this order.  Instead, they suggest that the plaintiff cannot show non-futility without submitting a proposed amended complaint.  (Doc. 28 at 12).  But the defendants have failed to support their assumption that the plaintiff bears the burden of showing non-futility, and the Court's brief review suggests the rule is otherwise.[20]  Though the plaintiff's path forward appears difficult, the Court cannot say with confidence that it is futile.

Certain claims, however, are being dismissed for reasons other than pleading deficiencies.  The plaintiff's constitutional privacy and due process claims are being dismissed because, even if the officers' conduct violated the plaintiff's constitutional rights, they are entitled to qualified immunity since it was not clearly established that their conduct violated those rights; no amount of re-pleading could change that fact or rescue these claims.  And the plaintiff's claims of sexual molestation and sexual misconduct are being dismissed because the plaintiff concedes there is no such cause of action.  As to the claims listed in this paragraph, leave to amend will be denied, since any amendment would be futile.

---

[20] *E.g., Synthes, Inc. v. Marotta*, 281 F.R.D. 217, 229 (E.D. Penn. 2012) ("[C]ourts place a heavy burden on opponents who wish to declare a proposed amendment futile.") (internal quotes omitted); *Mead v. City First Bank, N.A.*, 256 F.R.D. 6, 7 (D.D.C. 2009) ("A defendant bears the burden to show futility [of amendment]."); *Lewis v. United Food and Commercial Workers Local Union 464A*, 2015 WL 4414586 at *3 (D.N.J. 2015) ("The Court notes that the Union bears the burden of establishing that Plaintiff's proposed amendments are futile …."); *Estate of Simpson v. Bartholomew County Jail*, 2014 WL 5817319 at *1 (S.D. Ind. 2014) ("The party resisting the amendment bears the burden to show the amended complaint's futility."); *Price v. McKee*, 2013 WL 3388905 at *2 (D. Kan. 2013) ("Defendant, as the party asserting futility of amendment, has the burden to establish futility of Plaintiff's proposed amendment."); *Lindsey v. Butler*, 2013 WL 3186488 at *1 (S.D.N.Y. 2013) ("The party opposing a motion to amend has the burden of demonstrating that a proposed amendment would be futile.") (internal quotes omitted); *Bogor v. American Pony Express, Inc*., 2010 WL 3239387 at *2 (D. Ariz. 2010) ("Defendants have the burden of demonstrating that Plaintiff's requested amendment … would be futile ….").

## CONCLUSION

For the reasons set forth above, the defendants' motion to dismiss is **granted in part**, and the plaintiff's deemed motion for leave to amend is **granted in part**.  The official-capacity claims, and all claims other than Count II, are **dismissed**.  As to the Fourteenth Amendment equal protection aspect of Count I, and as to Counts V, VI and VII, the dismissal is with leave to amend.  Any amended complaint must be filed on or before **April 25, 2016**, failing which the dismissal of these claims will become final without further Court order.[21]  As to the official-capacity claims, Counts III and IV, the privacy and due process aspects of Count I, and the Fifth Amendment equal protection aspect of Count I, the dismissal is without leave to amend.  To the extent the parties seek different or additional relief, their motions are **denied**.

DONE and ORDERED this 4th day of April, 2016.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

[21] Although the Court has not dismissed Count II or Count V on immunity grounds, in crafting an amended complaint the plaintiff ignores at her peril the defendants' argument that she must plausibly allege an exception to state-agent immunity.

25