## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| REBECCA TIMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION 15-0516-WS-B |
| | ) | |
| SHAUN GOLDEN, etc., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

This matter is before the Court on the remaining defendants' motion to dismiss or, in the alternative, to strike. (Doc. 47). The parties have filed briefs in support of their respective positions, (Docs. 48, 52, 53), and the motion is ripe for resolution. After careful consideration, the Court concludes that the motion to dismiss is due to be granted in part and denied in part and that the motion to strike is due to be denied as moot. The Court further concludes that the sole surviving claim is due to be dismissed without prejudice for potential refiling in state court.

## BACKGROUND

The remaining defendants are the City of Atmore ("the City"), Jason Dean as the City's chief of police, and Officers Shaun Golden and Scott Walden.[1] According to the amended complaint, (Doc. 37), in October 2013[2] the plaintiff was arrested by non-defendant officers while under the influence of some foreign substance, with the plaintiff becoming combative and resisting arrest to the point

---

[1] The other three defendants have been dismissed pursuant to Rule 4(m). (Doc. 43).

[2] The amended complaint impossibly alleges that the incident occurred in October 2015 – after this lawsuit was filed. (Doc. 37 at 1). The defendants assert the incident occurred in October 2013, (Doc. 48 at 1), and the plaintiff does not dispute this chronology. Accordingly, the Court assumes the incident took place in October 2013.

she had to be tased in order to effect the arrest.  The plaintiff was placed in a cell at the City police station.  About two minutes later, an officer observed the plaintiff trying to hang herself, having taken off her shirt and fashioning a noose tied to the top of her cell door.  Two officers rushed in, removed the plaintiff's shirt from around her neck, and placed her on the cell bunk but took no other action to keep her from harming herself.  Medics were called, and the five defendant officers stood just outside the plaintiff's cell, watching her.  (Doc. 37 at 3-4).

At some point during the five minutes between when the plaintiff's suicide attempt was first observed (11:52) and when the medics arrived (11:57), the plaintiff – without manifesting any inclination that she was contemplating suicide or self-harm – got up from the bunk, cursed the five defendant officers, and claimed they had tried to kill and rape her.[3]  In retaliation for this accusation, and solely for their own sexual gratification, the defendant officers entered the cell, grabbed the plaintiff and began to undress her, with one (Golden) tasing the struggling plaintiff to get her to submit to the undressing.  The officers completely disrobed the plaintiff, then stared at her until the medics arrived.  (Doc. 1 at 4).

Count One, brought pursuant to Section 1983, alleges that the defendant officers committed acts of sexual molestation, sexual misconduct, outrage, and assault and battery, in violation of the plaintiff's Fourth Amendment right of privacy and her Fourteenth Amendment rights to due process and equal protection. Counts Two alleges a state claim of assault and battery against the officers, while Count Three alleges a state claim of outrage against them.  Count Four is a Section 1983 claim against Chief Dean, and Count Five is a Section 1983 claim against the City.  (Doc. 1 at 4-8).

---

[3] The plaintiff does not in this lawsuit claim they had in fact attempted any such thing.

The amended complaint is almost identical to the original complaint, save for the former's deletion of two state-law claims present in the earlier version. (Doc. 1 at 6-7).  The Court previously granted in part and denied in part the defendants' motion to dismiss the original complaint.  (Doc. 33).  In particular, the Court granted the motion to dismiss as to all claims (including the official-capacity claims) other than the assault and battery claim.  (*Id*. at 25).  The dismissal of the privacy and due process claims, the official-capacity claims, and two state claims was expressly made without leave to amend; the dismissal of all other claims was with leave to amend.  (*Id*.).

## DISCUSSION

The movants ask the Court to strike or dismiss the privacy, due process and official-capacity claims and to dismiss all other claims.

### I.  Privacy and Due Process.

The Court previously dismissed these claims because defendants Golden and Walden are entitled to qualified immunity.  (Doc. 33 at 3-15).  In particular, the plaintiff failed to carry her burden of showing that, when the incident occurred, it was clearly established, in the manner required by governing law, that the defendants' alleged conduct violated her constitutional rights.  Because "no amount of re-pleading could change that fact or rescue these claims," the Court denied the plaintiff leave to amend as to them.  (*Id*. at 24).  The plaintiff, ignoring this prohibition, nevertheless re-inserted the claims into her amended complaint.

The defendants propose that the Court strike these claims under Rule 12(f), but there is no need to do so, because the claims remain subject to dismissal based on qualified immunity.[4]  The only relevant allegations added by the amended

---

[4] The defendants also suggest the plaintiff "abandoned" these claims by failing to address them in her responsive brief, thereby requiring their dismissal on that ground. (Doc. 53 at 1-3).  For reasons it has detailed elsewhere, the Court does not accept a *sub*

complaint simply assert that the plaintiff, just before she was grabbed, undressed and tased, manifested no inclination towards self-harm and that the officers did not act from any motivation to protect her from self-harm but only to gratify their sexual desires and to retaliate for her accusations against them.  (Doc. 37 at 4). These allegations, if believed, would indicate that the officers acted from subjectively bad motives but, as the Court thoroughly discussed previously, the plaintiff's privacy and due process claims depend on the objective circumstances, not on the officers' subjective motives.  To avoid qualified immunity, the plaintiff was required to produce holdings from Supreme Court or Eleventh Circuit cases, pre-dating the incident, reflecting that the defendants' conduct was constitutionally unreasonable given the circumstances they faced – not the mental state they possessed.  The plaintiff did not do so previously, and she has made no attempt to do so now.  Defendants Golden and Walden thus remain cloaked by qualified immunity, and these claims are due to be dismissed.

## II.  Official Capacity.

Despite agreeing that the defendants' previous motion to dismiss her official-capacity claims was "well taken," (Doc. 25 at 8), and despite the Court's consequent dismissal of those claims without leave to amend, (Doc. 33 at 25), the plaintiff nevertheless reinserted these claims in her amended complaint.  (Doc. 37 at 1).  These claims could justifiably be stricken, but the Court instead will dismiss them based on the plaintiff's standing admission that they are due to be dismissed.

## III.  Equal Protection.

The Court dismissed the plaintiff's equal protection claim because she failed to allege that she had been treated less favorably than any other individual or group.  (Doc. 33 at 15-17).  The Court granted the plaintiff leave to amend this

---

*silentio* "abandonment" theory of resolving motions to dismiss.  *Gailes v. Marengo County Sheriff's Department*, 916 F. Supp. 2d 1238, 1241-44 (S.D. Ala. 2013).

4

claim because it was not clear she was unable to rectify this pleading deficiency. (*Id*. at 23-24).

The amended complaint adds certain allegations relevant to the equal protection claim:  that neither male inmates who attempted suicide with their own clothing, nor other inmates who made accusations against police officers, were forcibly stripped naked and stared at by officers.  (Doc. 37 at 5).  The officer defendants respond that the amended complaint fails to state a claim and that, in any event, they are protected by qualified immunity.  (Doc. 48 at 7-15).

### A.  Failure to State a Claim.

As the defendants acknowledge, an equal protection claim can be based on discrimination against either a group of which the plaintiff is a member or an individual.  The amended complaint asserts both.[5]

### 1.  "Class of one" discrimination.

The plaintiff's class-of-one claim is that, in retaliation for making false accusations against the officers, she was stripped naked and stared at while other inmates who made accusations against police officers were not.  (Doc. 37 at 4-5).[6] The defendants note that the amended complaint identifies no comparator, much less a comparator similarly situated in all relevant respects.  (Doc. 48 at 9-10). This argument introduces the "plausibility" analysis required by the Supreme

---

[5] The defendants deny that the amended complaint alleges discrimination against an identifiable group, (Doc. 48 at 9), but the allegation that male inmates who attempted suicide were treated differently clearly asserts discrimination against the plaintiff due to her gender.

[6] In their reply brief, the defendants read into this allegation a lurking First Amendment retaliation claim, which they proceed to address.  (Doc. 53 at 4-6).  Were there such a claim, the defendants could not properly first address it in a reply brief. There is, however, no such claim presented in the amended complaint; the only claim presented by this allegation is discriminatory retaliation under the Equal Protection Clause of the Fourteenth Amendment.  (Doc. 37 at 5-6).

Court.  To survive dismissal under Rule 12(b)(6), a complaint must first satisfy the pleading requirements of Rule 8(a)(2).  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2009).   Rule 8(a)(2) provides that "[a] pleading that states a claim for relief must contain … a short and plain statement of the claim showing that the pleader is entitled to relief …."  While Rule 8 establishes a regime of "notice pleading," *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 513-14 (2002), it does not eliminate all pleading requirements.

First, the complaint must address all the elements that must be shown in order to support recovery under one or more causes of action.  "At a minimum, notice pleading requires that a complaint contain inferential allegations from which we can identify each of the material elements necessary to sustain a recovery under some viable legal theory."  *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 960 (11th Cir. 2009) (emphasis and internal quotes omitted).

Pleading elements is necessary, but it is not enough to satisfy Rule 8(a)(2).  The rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do" to satisfy that rule.  *Twombly*, 550 U.S. at 555.  There must in addition be a pleading of facts.  Though they need not be detailed, "[f]actual allegations must be enough to raise a right to relief above the speculative level ...."  *Id*.  That is, the complaint must allege "enough facts to state a claim for relief that is plausible on its face."  *Id*. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard … asks for more than a sheer possibility that the defendant has acted unlawfully," and "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Id*. (internal quotes omitted).  A complaint lacking "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" will not "survive a motion to dismiss."  *Id*.  But so long as

6

the plausibility standard is met, the complaint "may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotes omitted).

In a class-of-one case, a plaintiff must prove she was treated differently from similarly situated comparators, and "the comparators must be *prima facie* identical in all relevant respects." *Grider v. City of Auburn*, 618 F.3d 1240, 1263-64 (11th Cir. 2010) (internal quotes omitted).  To adequately plead such a claim, "a plaintiff must allege more than broad generalities in identifying a comparator." *Alvarez v. Secretary*, ___ Fed. Appx. ___, 2016 WL 1238185 at *5 (11th Cir. 2016) (internal quotes omitted).  Instead, "a complaint must identify sufficient facts about a comparator to determine whether the comparator is similarly situated." *Id*.  Thus, a "'class of one' plaintiff might fall to state a claim by omitting key factual details in alleging that [she] is 'similarly situated' to another.'" *Id*. (quoting *Griffin Industries, Inc. v. Irvin*, 496 F.3d 1189, 1205 (11th Cir. 2007)).

In *Alvarez*, the complaint fell short of the plausibility standard because, while it listed some characteristics of the (unidentified) comparator, it "fail[ed] to describe the comparator's characteristics that would be relevant to an objectively reasonable governmental decisionmaker."  2016 WL 1238185 at *5 (internal quotes omitted).  In *Thorne v. Chairperson Florida Parole Commission*, 427 Fed. Appx. 765 (11th Cir. 2011), a class-of-one claim was merely speculative under *Twombly* when the complaint alleged that other prisoners who (like the plaintiff) had been convicted of murder and had a history of parole violations received more favorable release dates and more frequent parole hearings but did not address other considerations relevant to parole decisions, such as the length and trend of the comparators' criminal history and the degree of risk posed to others by their release.  *Id*. at 768, 771.  The Eleventh Circuit was apparently more generous in *Slakman v. Buckner*, 434 Fed. Appx. 872 (11th Cir. 2011), when it ruled that a complaint alleging discriminatory denial of parole satisfied *Twombly* by alleging

the comparators' underlying offenses, employment and educational record, even though it did not address the comparators' criminal history or disciplinary record – two factors the panel acknowledged were important to parole decisions.  *Id*. at 876.

The Court need not decide precisely how much detail concerning comparators is needed to survive a *Twombly-Iqbal* challenge to a class-of-one equal protection claim, because the amended complaint clearly falls short under even the most forgiving approach.  The plaintiff's class-of-one claim is that she was stripped naked and stared at in retaliation for making false accusations against the defendants, while other inmates who made accusations against police officers were not.  (Doc. 37 at 4-5).  That bland statement, however, does not accurately capture the plaintiff's situation.  By her own pleading, the plaintiff was under the influence of alcohol and/or drugs, became combative when arrested shortly before, attempted to hang herself with her shirt a few minutes earlier, and was in her cell cursing and making false accusations of attempted rape and murder when she was disrobed.  The plaintiff presumably need not present comparators fitting precisely that description to survive dismissal, but she must at least identify some aspects of their situations that make their stories more or less parallel to hers.  Because she has not done so, the plaintiff's class-of-one equal protection claim is due to be dismissed for failure to state a claim.

### 2. Sex discrimination.

The plaintiff's sex discrimination claim rests on her allegations that the officer defendants forcibly stripped her naked, and then stared at her, "for their own sexual gratification," while male inmates who used their clothing to attempt suicide were not so treated.  (Doc. 37 at 4-5).[7]  The defendants devote most of

---

[7] In her brief, the plaintiff suggests her equal protection claim extends to being tased.  (Doc. 52 at 4-5).  Her amended complaint, however, confines the claim to being stripped and stared at.

their time to challenging the plausibility of the amended complaint's allegation that they harbored a sexually discriminatory motive.  (Doc. 48 at 10-13).  The Court is skeptical, but it need not delve into that issue because the officer defendants are entitled to qualified immunity as to the plaintiff's sex discrimination claim.

### B.  Qualified Immunity.

 "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  "[T]he burden is first on the defendant to establish that the allegedly unconstitutional conduct occurred while he was acting within the scope of his discretionary authority."  *Harbert International, Inc. v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998).  The burden then shifts to the plaintiff to show that the defendant's conduct "violated a clearly established statutory or constitutional right."  *Grayden v. Rhodes*, 345 F.3d 1225, 1231 (11th Cir. 2003).[8]

The Court has already recognized that the defendants have carried their burden of showing they were acting within the scope of their discretionary authority.  (Doc. 33 at 3-5).  The burden is thus on the plaintiff to show that the officer defendants violated a clearly established constitutional right of female inmates under the Equal Protection Clause not to be undressed by male police officers in the wake of a suicide attempt.

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct

---

[8] "While qualified immunity is typically addressed at the summary judgment stage of the case, the defense may be raised and considered on a motion to dismiss; the motion will be granted if the complaint fails to allege the violation of a clearly established constitutional right."  *Chesser v. Sparks*, 248 F.3d 1117, 1121 (11th Cir. 2001) (internal quotes omitted).

was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). "In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012) (internal quotes omitted). "The salient question … is whether the state of the law at the time of an incident provided fair warning to the defendants that their alleged conduct was unconstitutional." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014). To attain that level, "the right allegedly violated must be established, not as a broad general proposition, … but in a particularized sense so that the contours of the right are clear to a reasonable official." *Reichle*, 132 S. Ct. at 2094. The law is clearly established if any of three situations exists.

"First, the words of the pertinent federal statute or constitutional provision in some cases will be specific enough to establish clearly the law applicable to particular conduct and circumstances to overcome qualified immunity, even in the total absence of case law." *Vinyard v. Wilson*, 311 F.3d 1340, 1350 (11th Cir. 2002) (emphasis omitted). The requisite fair and clear notice can be given without case law only "[i]n some rare cases." *Williams v. Consolidated City of Jacksonville*, 341 F.3d 1261, 1270 (11th Cir. 2003).

"Second, ... some broad statements of principle in case law are not tied to particularized facts and can clearly establish law applicable in the future to different sets of detailed facts." *Vinyard*, 311 F.3d at 1351. "For example, if some authoritative judicial decision decides a case by determining that 'X Conduct' is unconstitutional without tying that determination to a particularized set of facts, the decision on 'X Conduct' can be read as having clearly established a constitutional principle: put differently, the precise facts surrounding 'X Conduct' are immaterial to the violation." *Id*. "[I]f a broad principle in case law is to establish clearly the law applicable to a specific set of facts facing a government official, it must do so with obvious clarity to the point that every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted." *Id*. (internal

quotes omitted).  "[S]uch decisions are rare," and "broad principles of law are generally insufficient to clearly establish constitutional rights."  *Corey Airport Services, Inc. v. Decosta*, 587 F.3d 1280, 1287 (11th Cir. 2009).

"Third, [when] the Supreme Court or we, or the pertinent state supreme court has said that 'Y Conduct' is unconstitutional in 'Z Circumstances,'" then if "the circumstances facing a government official are not fairly distinguishable, that is, are materially similar [to those involved in the opinion], the precedent can clearly establish the applicable law."  *Vinyard*, 311 F.3d at 1351-52.

When case law is utilized to show that the law was clearly established, the plaintiff must "point to law as interpreted by the Supreme Court [or] the Eleventh Circuit," and such case law must pre-date the challenged conduct.  *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005); *accord Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011) (en banc).  Moreover, "[t[he law cannot be established by dicta[, which] is particularly unhelpful in qualified immunity cases where we seek to identify clearly established law."  *Santamorena v. Georgia Military College*, 147 F.3d 1337, 1342 n.13 (11th Cir. 1998) (internal quotes omitted).

The defendants deny that the plaintiff can show the violation of a clearly established right under the Equal Protection Clause, (Doc. 48 at 14-15), and the plaintiff has not attempted to meet her burden, instead settling for a bald insistence that the right was clearly established.  (Doc. 52 at 5).  Clearly established law, however, must be shown by the holdings of Supreme Court and/or Eleventh Circuit cases, and the plaintiff cites none.  While the Equal Protection Clause applies in some measure to restrained persons,[9] this does not mean that any difference in treatment between inmates violates equal protection.  As the Tenth

---

[9] "Under the Equal Protection Clause, prisoners have a right to be free from racial discrimination."  *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995).  "This Court has recognized that an inmate may challenge the denial of pardon or parole on equal protection grounds …."  *Fuller v. Georgia State Board of Pardons and Paroles*, 851 F.2d 1307, 1310 (11th Cir. 1988).

Circuit has noted, "[t]he Equal Protection Clause in the prison-conditions context is usually invoked to remedy disparities in educational, vocational, and recreational programs offered to male and female inmates," while "[c]laims of sexual harassment and assault of inmates by prison guards are more properly analyzed under the Eighth Amendment." *Barney v. Pulsipher*, 143 F.3d 1299, 1312 n.15 (10th Cir. 1998).

Because the plaintiff has failed to meet her burden of showing that the officer defendants' alleged conduct violated a clearly established equal protection right, they are entitled to qualified immunity as to her sex discrimination claim.[10]

## IV.  Supervisory Liability.

Count Four alleges that Chief Dean's "deliberate indifference to the hiring, lack of training and supervision of" the five officer defendants proximately caused the violation of the plaintiff's privacy, due process and equal protection rights. (Doc. 37 at 8).  Count Four is substantively identical to Count Six of the original complaint, which the Court dismissed, with leave to amend, for failure to state a claim.  (Doc. 33 at 25).

The defect of the original complaint was that it did not allege, plausibly or otherwise, any of the recognized legal bases for supervisory liability.  (Doc. 33 at 17-18).  The plaintiff's only effort to remedy this defect is the amended complaint's new allegation that the officer defendants "had not received training as to how to handle situations involving possible suicidal attempts by female inmates, nor had they received supervision relating to same."  (Doc. 37 at 5).  The

---

[10] "Because qualified immunity is only a defense to personal liability for monetary awards resulting from government officials performing discretionary functions, qualified immunity may not be effectively asserted as a defense to a claim for declaratory or injunctive relief." *Ratliff v. DeKalb County*, 62 F.3d 338, 340 n.4 (11th Cir. 1995); *accord Swint v. City of Wadley*, 51 F.3d 988, 1001 (11th Cir. 1995); *D'Aguanno v. Gallagher*, 50 F.3d 877, 879 (11th Cir. 1995).  The amended complaint, however, does not seek declaratory or injunctive relief.  (Doc. 37 at 6).

defendants argue the amended complaint does not correct the deficiency of the original.  (Doc. 48 at 20-22).  The defendants actually understate the case; the quoted new allegation does nothing more than restate what the original complaint already alleged – the "lack of training and supervision" of the defendant officers that led to the alleged violation of the plaintiff's constitutional rights.  (Doc. 1 at 8).

"It is well-established that § 1983 claims may not be brought against supervisory officials on the basis of vicarious liability or respondeat superior." *Amnesty International v. Battle*, 559 F.3d 1170, 1180 (11th Cir. 2009).  Instead, "[s]upervisory liability lies where the defendant personally participates in the unconstitutional conduct or there is a causal connection between such conduct and the defendant's actions."  *Harper v. Lawrence County*, 592 F.3d 1227, 1236 (11th Cir. 2010).  The causal connection can be established in any of three ways (for a total of four potential bases of liability).  The first requires both a "history of widespread abuse" placing the supervisor "on notice of the need to correct the alleged deprivation" and the supervisor's failure to do so.  The second is established "when a supervisor's custom or policy … result[s] in deliberate indifference to constitutional rights."  The third requires that the supervisor "directed the subordinates to act unlawfully" or "knew" they would do so "and failed to stop them from doing so."  *Id*. (internal quotes omitted).

To satisfy Rule 8(a)(2), "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.  The Eleventh Circuit has thus routinely required the dismissal of Section 1983 claims against supervisors for failure plausibly to allege any of the foregoing bases for supervisory liability.  *E.g., Franklin v. Curry*, 738 F.3d 1246, 1249-52 (11th Cir. 2013); *Magwood v. Secretary, Florida Department of Corrections*, ___ Fed. Appx. ___, 2016 WL 3268699 at *3 (11th Cir. 2016); *Smith v. City of Sumiton*, 578 Fed. Appx. 933, 937 (11th Cir. 2014); *Rosa v. Florida Department of Corrections*, 522 Fed. Appx. 710,

716 (11th Cir. 2013); *Heard v. Commissioner*, 486 Fed. Appx. 780, 781-82 (11th Cir. 2012); *Thomas v. Poveda*, 518 Fed. Appx. 614, 618 (11th Cir. 2013).

The amended complaint, like its predecessor, fails to expressly identify any basis for supervisory liability. It does, however, like the original, accuse Chief Dean of "deliberate indifference" to the defendant officers' lack of training and supervision regarding suicide attempts by female inmates, (Doc. 37 at 8),[11] and the plaintiff argues this implicates the "custom or policy" prong of supervisory liability. (Doc. 52 at 6). The Court agrees. "A supervisory official is not liable under section 1983 for an injury resulting from his failure to train subordinates unless his failure to train amounts to deliberate indifference to the rights of persons with whom the subordinates come into contact and the failure has actually caused the injury of which the plaintiff complains." *Belcher v. City of Foley*, 30 F.3d 1390, 1397 (11th Cir. 1994) (internal quotes omitted). "Only when the failure to train can amount to deliberate indifference can it properly be characterized as the 'policy' or 'custom' that is necessary for section 1983 liability to attach." *Id*.

To satisfy Rule 8(a)(2), it is not enough merely to incant the catch phrase, "deliberate indifference"; instead, the plaintiff must allege facts plausibly showing that the supervisor was deliberately indifferent. Thus, for example, dismissal was required when a plaintiff "did not make any allegations supporting a conclusion that the alleged failure to train amounted to deliberate indifference, such as a history of abuse that put the supervisor on notice." *Thomas*, 518 Fed. Appx. at 618; *cf. Barr v. Gee*, 437 Fed. Appx. 865, 875 (11th Cir. 2011) (where county's liability was based on an alleged "policy of inadequate training or supervision" amounting to deliberate indifference, the claim was inadequately pleaded when the complaint "did not allege facts supporting a plausible inference either that the County was on notice beforehand of a need to train in this area, or that the County made a deliberate choice not to do so").

---

[11] Although the amended complaint also mentions hiring, (Doc. 37 at 8), the plaintiff in her brief limits the claim to lack of supervision and training. (Doc. 52 at 6).

As in *Thomas* and *Barr*, the amended complaint here offers no factual material to support the plaintiff's raw conclusion that Chief Dean acted with deliberate indifference.  In particular, it fails to allege a history of male officers violating the constitutional rights of female suicidal inmates.  Instead, the amended complaint "rest[s] on generic labels and legal conclusions, not specific facts," just as did the complaint in *Patterson v. Walden*, 2013 WL 3153761 (S.D. Ala. 2013) – which was filed against Chief Dean by the same plaintiff's counsel based on the same bland "deliberate indifference to the hiring, lack of training and supervision" allegation presented here.  *Id*. at *4-5.  As in *Patterson*, the amended complaint's "conclusory, formulaic use of terms like 'deliberate indifference' and 'lack of training and supervision' falls well short of establishing the requisite plausibility for *Twombly*/*Iqbal* purposes."  *Id*. at *5.  As in *Patterson*, Chief Dean's motion to dismiss is therefore due to be granted.[12]

## V.  Municipal Liability.

Count Five adds no new factual allegations.  Instead, it simply incorporates by reference earlier allegations, the only relevant ones being the same ones employed in the service of Count Four.  (Doc. 37 at 8).  Count Five is thus substantively identical to Count Seven of the original complaint, which the Court dismissed, with leave to amend, for failure to state a claim.  (Doc. 33 at 25).

The defect of the original complaint was that it failed to allege, plausibly or otherwise, any basis for the City's liability for any constitutional violation by the defendant officers.  (Doc. 33 at 18-19).  The defendants argue the amended

---

[12] The Court recognizes that a failure to train can amount to deliberate indifference, even absent a history of constitutional violations, "when the failure to train is likely to result in the violation of a constitutional right."  *Belcher*, 30 F.3d at 1398.  But the plaintiff does not assert such a likelihood in either her amended complaint or her brief.  In any event, and as the Court has previously explained, this theoretical exception to the requirement of showing a history of constitutional violations is so "narrow" as to be essentially impassable in all but the most egregious situations, *Raby v. Reese*, 2016 WL 1642677 at *7 (S.D. Ala. 2016), which this case does not implicate.

complaint continues this fatal defect.  (Doc. 48 at 15-19).  The plaintiff responds that Chief Dean was vested with final policymaking authority regarding hiring, training and supervision of the City's police officers, such that his failure constitutes the City's.  (Doc. 52 at 7-9).  This is exactly the same argument – verbatim, in fact – which the plaintiff raised in defense of her original complaint. (Doc. 25 at 6-8).  The Court rejected the plaintiff's argument before, and it fares no better a second time around.  First, the amended complaint contains no allegation – plausible or otherwise – that Chief Dean holds final policymaking authority regarding hiring, training or supervision.[13]  Second, and as discussed in Part IV, the amended complaint does not plausibly allege that Chief Dean was deliberately indifferent, and the standard for municipal liability is equivalent.  *E.g., Lewis v. City of West Palm Beach*, 561 F.3d 1288, 1293 (11th Cir. 2009).  The pleading deficiency of Count Four therefore infects Count Five as well.  For both these reasons, the City's motion to dismiss this claim is due to be granted.

## VI.  Outrage.

Among the elements of an outrage claim is the infliction of severe emotional distress.  *E.g., Ex parte Crawford & Co.*, 693 So. 2d 458, 460 (Ala. 1997).  The Court granted the defendants' previous motion to dismiss this claim because the complaint did not allege that the plaintiff had experienced severe – or any – emotional distress.  (Doc. 33 at 22).  As the defendants note, (Doc. 48 at 25), the amended complaint continues this omission.  The motion to dismiss this claim is thus due to be granted.

---

[13] Whether Chief Dean could be considered to have final policymaking authority depends on the extent his decisions are subject to meaningful review, and police chiefs have been found or assumed to lack such authority due to such susceptibility to review. *E.g., Morro v. City of Birmingham*, 117 F.3d 508, 514 (11th Cir. 1997); *Hill v. Clifton*, 74 F.3d 1150, 1152 (11th Cir. 1996).

**VII.  Assault and Battery.**

The defendants repeat an argument from their prior motion to dismiss based on Section 13A-3-24(4) of the Alabama Criminal Code.  (Doc. 48 at 23-25).  The Court found several problems with the argument, including that invocation of the statute could support dismissal only if the allegations of the complaint, of themselves, established that the defendants subjectively and reasonably believed the plaintiff was about to kill herself when they stripped and tased her and only if they subjectively and reasonably believed that stripping and tasing her was necessary to save her life – which the amended complaint plainly does not do.  (Doc. 33 at 19-20).  While the defendants' present motion responds to several of the Court's other reservations, it does not address this one, and that omission dooms their statutory argument.

The defendants also reassert their claim to state-agent immunity.  (Doc. 48 at 27-30).  The Court previously found that Golden and Walden were engaged in a discretionary function and law enforcement duty, such that they are immune unless an exception to immunity applies.  (Doc. 33 at 20-21).  The plaintiff does not suggest the Court should reconsider that ruling, and the Court declines to do so.

The defendants argue that the plaintiff is legally required to plead an exception to state-agent immunity and to do so plausibly.  (Doc. 48 at 29).  Their only authority for this proposition is an unpublished Eleventh Circuit opinion that the Court does not find persuasive.[14]  But even if such pleading were required, the defendants have not demonstrated that the amended complaint falls short.

State-agent immunity is lost if the defendant acted, *inter alia*, "willfully, maliciously [or] in bad faith."  *Ex parte Kennedy*, 992 So. 2d 1276, 1282 (Ala. 2008).  As the Court has noted, "[f]or purposes of the immunity issue, 'willful,'

---

[14] "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants."  *Bonilla v. Baker Concrete Construction, Inc.*, 487 F.3d 1340, 1345 n.7 (11th Cir. 2007).

'malicious' and 'bad faith' all require … that the defendant acted with the intent to injure or with ill will towards the plaintiff." *Rachel v. City of Mobile*, 112 F. Supp. 3d 1263, 1296 (S.D. Ala. 2015) (internal quotes omitted).  The defendants themselves concede that willfulness "connotes a purpose to act wrongfully." (Doc. 48 at 29).  As previously noted, the amended complaint alleges that the defendant officers stripped the plaintiff (and Golden tased the plaintiff) for no legitimate penological reason but purely in retaliation for her false accusations against them and to gratify their sexual desires.  (Doc. 37 at 4).  It is not immediately apparent how such allegations could fail to implicate the malice, willfulness and bad faith exceptions to qualified immunity.

The defendants counter that the plaintiff's allegations of a retaliatory or sexual motivation are mere "conclusions" that, pursuant to *Twombly* and *Iqbal*, must be ignored.  (Doc. 48 at 30).  They also argue that the allegations of the complaint make it "more likely" that they acted from legitimate motives of saving the plaintiff from self-destruction and that this "obvious alternative explanation" defeats the plausibility of the plaintiff's allegations.  (*Id*. at 10-13).  The defendants draw the latter quoted phrases from *Iqbal*, 566 U.S. at 681-82.

Had the amended complaint simply declared that they acted from improper motives, the defendants might have an argument.  But the pleading also alleges that, when she was stripped and tased, the plaintiff was neither threatening to kill herself nor taking any action indicating she was about to kill herself.  Indeed, the amended complaint alleges that the two officers that stopped her suicide attempt were satisfied with relieving her of her shirt/noose, placing her on her bunk and leaving the cell – conduct raising an inference that the danger had passed. According to the amended complaint, the defendants did not re-enter the plaintiff's cell in response to a suicide threat but in response to the plaintiff cursing them and accusing them of having tried to rape and kill her.  While such conduct may make it plausible that the defendants had legitimate motives (perhaps they thought the

18

plaintiff was becoming unhinged as a prelude to another attempt), it is also plausible from these allegations that they harbored retaliatory and/or sexual ones.

It is not clear from the foregoing discussion that the defendants' innocent explanation for their conduct is the "more likely" one. But even if it were, the defendants misread *Iqbal*. While it is true that *some* exculpatory explanations may in *some* circumstances be so obvious and strong as to render any inculpatory allegation implausible as a matter of law,[15] *Iqbal* does not stand for the proposition that only the most likely explanation can be plausible for pleading purposes. Nor could it, given its explicit caution that "[t]he plausibility standard is not akin to a 'probability requirement' …." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).

Because the defendants have not shown that the amended complaint fails either to state a claim or to adequately plead an exception to state-agent immunity, their motion to dismiss this claim is due to be denied.

## VIII.  Amendment.

"A district court is not required to grant a plaintiff leave to amend his complaint *sua sponte* when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court." *Wagner v. Daewoo Heavy Industries America Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (en banc). The plaintiff knows this rule, since the Court quoted it in its earlier order. (Doc. 33 at 23). The plaintiff, who is represented by counsel, moved for leave to file an amended complaint should she lose in any part on the defendants' original motion to dismiss, (Doc. 25 at 8-9), and the Court granted leave. (Doc. 33 at 23-25). However, the plaintiff has not requested leave to file a

---

[15] In *Iqbal*, the choice was between "purposeful, invidious discrimination" against Arab Muslims in the immediate aftermath of 9-11 and a "nondiscriminatory intent to detain aliens who were illegally present in the United States and who had potential connections to those who committed terrorist acts." 556 U.S. at 682. It hardly needs saying that the instant case bears no resemblance to that sobering scenario.

second amended complaint.  In light of this history, the Court must conclude that her silence is intentional and reflects her desire to rest on her amended complaint.

Even had the plaintiff sought leave to amend, the Court would be loath to grant such relief.  As to several claims, the officer defendants are cloaked with qualified immunity, and no amount of re-pleading could alter that fact or rescue those claims.  As to the claims being dismissed for failure to state a claim, the plaintiff's failure to adequately plead them was pointed out with great specificity in the Court's previous order, yet she elected to file an amended complaint that does not address those expressly identified deficiencies in any meaningful way.[16]

In short, the dismissed claims will be dismissed with prejudice and without leave to amend.

## IX.  Supplemental Jurisdiction.

In general, "[i]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  The Court has original jurisdiction based on the federal claims of Counts One, Four and Five; the Court has only supplemental jurisdiction over the sole surviving state claim of assault and battery.[17]

"The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if … the district court has dismissed all claims over

---

[16] As discussed in text, the amended complaint makes no new factual allegations as to Counts Three, Four and Five and only one as to the class-of-one equal protection claim under Count One:  a conclusory assertion of an unidentified, undescribed comparator.

[17] Neither the complaint nor the amended complaint invokes diversity jurisdiction, and both affirmatively negate the existence of diverse citizenship.  (Doc. 1 at 1-3; Doc. 37 at 1-3).

which it has original jurisdiction."  28 U.S.C. § 1367(c).  Because it is dismissing all claims over which it has original jurisdiction, the Court has discretion to dismiss the remaining state claim under Section 1367(c).

In exercising its discretion under Section 1367(c), "the court should take into account concerns of comity, judicial economy, convenience, fairness, and the like."  *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County*, 402 F.3d 1092, 1123 (11th Cir. 2005) (internal quotes omitted); *accord Estate of Amergi ex rel. Amergi v. Palestinian Authority*, 611 F.3d 1350, 1366 (11th Cir. 2010).  However, "[w]e have encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial."  *Raney v. Allstate Insurance Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004).  This preference exists because, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims."  *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

The preference for declining supplemental jurisdiction is particularly strong when the federal claims "have dropped out of the lawsuit in its early stages."  *Cohill*, 484 U.S. at 350.  Here, they are dropping out on motion to dismiss, before any discovery has occurred.  (Docs. 17, 20).

Even had the federal claims survived the motions to dismiss and the ensuing discovery process, the preference for not exercising supplemental jurisdiction over state claims also applies when the federal claims are removed on motion for summary judgment.  *See, e.g., Michael Linet, Inc. v. Village of Wellington*, 408 F.3d 757, 763 (11th Cir. 2005); *Murphy v. Florida Keys Electric Cooperative Association*, 329 F.3d 1311, 1320 (11th Cir. 2003); *Graham v. State Farm Mutual Insurance Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999) ("If no federal claim survives summary judgment, the court sees no reason why the other claims

should not be dismissed or remanded pursuant to 28 U.S.C. § 1367(c)(3).").[18]  In

such a situation, considerations of comity and fairness among the parties continue

to favor dismissal.  *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)

("Needless decisions of state law should be avoided as a matter of comity and to

promote justice between the parties, by procuring for them a surer-footed reading

of applicable law.  Certainly, if the federal claims are dismissed before trial, ... the

state claims should be dismissed as well.").  Thus, even were the Court dismissing

the federal claims on motion for summary judgment, retention of jurisdiction in

this case would be indicated only if considerations of judicial economy and

convenience favored such retention with sufficient force to outweigh the

continuing pull of comity and fairness towards dismissal.

　　　Impacts on judicial economy are measured in order to "support the

conservation of judicial energy and avoid multiplicity in litigation" or "substantial

duplication of effort."  *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 746

(11th Cir. 2006) (internal quotes omitted).  The Court discerns no appreciable

negative impact on judicial economy by dismissing this action for refiling in state

court, given that no discovery has occurred and that the case has distilled into one

for assault and battery only.

　　　As for convenience, the plaintiff is a resident of Elmore County, while the

officer defendants are residents of Escambia County.  (Doc. 37 at 1-3).  The events

at issue took place in Escambia County, and the known non-defendant witnesses

---

[18] Other Eleventh Circuit cases affirming a trial court's decision to decline
supplemental jurisdiction after dismissing all federal claims on motion for summary
judgment include, without limitation, *Finn v. Haddock*, 459 Fed. Appx. 833, 838 (11th
Cir. 2012); *Handi-Van Inc. v. Broward County*, 445 Fed. Appx. 165, 170 (11th Cir. 2011);
*Dockens v. DeKalb County School System*, 441 Fed. Appx. 704, 709 (11th Cir. 2011);
*Linares v. Armour Correctional Health Services, Inc.*, 385 Fed. Appx. 926, 929 (11th Cir.
2010); *Dukes v. Georgia*, 212 Fed. Appx. 916, 917 (11th Cir. 2006); *Arnold v. Tuskegee
University*, 212 Fed. Appx. 803, 811 (11th Cir. 2006); *Lingo v. City of Albany*, 195 Fed.
Appx. 891, 894 (11th Cir. 2006); *Austin v. City of Montgomery*, 196 Fed. Appx. 747, 755
(11th Cir. 2006); and *Ingram v. School Board*, 167 Fed. Appx. 107, 108-09 (11th Cir.
2006).

are other City police officers, with the City located in Escambia County.  Thus, all parties and witnesses will be approximately 60 miles closer to home if this case is litigated in Escambia County rather than in Mobile County.

The Court has often engaged in a similar analysis after all federal claims were dismissed, even substantially later than in this case, and decided not to exercise supplemental jurisdiction over remaining state claims in the absence of diversity jurisdiction.[19]  This case offers no more compelling an argument for exercising supplemental jurisdiction than did those.

In summary, after weighing the relevant factors as identified and expounded upon by controlling authority, the Court concludes that it should exercise its discretion not to exercise supplemental jurisdiction.  In such a case, the proper course is to "dismiss[s] [the surviving state claims] without prejudice so that the claims may be refiled in the appropriate state court."  *Crosby v. Paulk*, 187 F.3d 1339, 1352 (11th Cir. 1999).[20]

## CONCLUSION

For the reasons set forth above, the defendants' motion to dismiss is **granted** with respect to all official-capacity claims; **granted** with respect to Counts One, Three, Four and Five; and **denied** with respect to Count Two.  The defendants' motion to strike is **denied as moot**.

Counts One, Three, Four and Five are **dismissed with prejudice**.  Chief Dean and the City are **dismissed with prejudice** as defendants.   Count Two is **dismissed without prejudice** pursuant to Section 1367(c).

---

[19] *E.g., Wright Transportation, Inc. v. Pilot Corp.*, 2015 WL 6511306 (S.D. Ala. 2015); *Dunavant v. Sirote and Permutt, P.C.*, 2014 WL 2885483 (S.D. Ala. 2014); *Dyas v. City of Fairhope*, 2011 WL 941496 (S.D. Ala. 2011); *Amazing Grace Bed & Breakfast v. Blackmun*, 2011 WL 777892 (S.D. Ala. 2011); *Park City Water Authority v. North Fork Apartments, L.P.*, 2011 WL 117043 (S.D. Ala. 2011); *Dawson v. Piggott*, 2010 WL 4260108 (S.D. Ala. 2010); *Young v. City of Gulf Shores*, 2009 WL 920302 (S.D. Ala. 2009).

[20] Section 1367(d) provides a brief tolling period for this purpose.

DONE and ORDERED this 10th day of August, 2016.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE